# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

MARYANNE LATANYSHYN,

    Plaintiff,

v.

WELKIN, LLC aka WELKIN WA, LLC, a Delaware Corporation, and HAMISH ORRICK, an individual,

    Defendants.

Case No. 17-CV-00006

COMPLAINT

JURY TRIAL DEMANDED

## I.    INTRODUCTION

1.1    Plaintiff brings this action because Defendants have failed to pay her wages due for her work, and terminated her when she asserted her right to be paid, in violation of state and federal law. Defendants also failed to provide promised equity to Plaintiff, and to reimburse work-related expenses.

## II.    PARTIES

2.1    Plaintiff, MARYANNE LATANYSHYN ("Ms. Latanyshyn"), is a resident of New York, New York. Ms. Lantanyshyn lived, and worked for Defendants, in King County, Washington, from January 2015 until she was terminated on March 17, 2016. Prior to that, she

worked for Defendants from New York, New York. Ms. Latanyshyn was an employee of Defendants, as "employee" is defined by RCW 49.46.010(3) and 29 USC §203(e)(1).

2.2 Defendant, WELKIN, LLC aka WELKIN WA, LLC ("Welkin" or "the Company") is a Delaware limited liability company, with its principal place of business in Seattle, King County, Washington. With respect to Ms. Latanyshyn, Welkin was an "employer" as defined by 49.46.010(4) and 29 USC §203(d).

2.3 Defendant HAMISH ORRICK ("ORRICK") is a Managing Member, and the Chief Financial Officer and Chief Operating Officer of Welkin. Orrick resides Rancho Mirage, California. With respect to Ms. Latanyshyn, Orrick was an "employer" as defined by 49.46.010(4) and 29 USC §203(d).

### III. JURISDICTION AND VENUE

3.1 This Court has jurisdiction under 28 U.S.C. § 1331 based upon issues raised by federal statutes, including the Fair Labor Standards Act of 1938, as amended, 29 USC §201, *et seq*. ("FLSA").

3.2 This Court has jurisdiction under 28 U.S.C. § 1332 based upon diversity of citizenship. The amount in controversy exceeds $75,000.

3.3 Venue is proper pursuant to 28 U.S.C. § 1391(b) because Ms. Latanyshyn was employed by Defendants in Seattle, King County, Washington and Defendants' wrongful actions occurred in this District.

### IV. SUMMARY OF FACTS

**A. Ms. Latanyshyn's Employment with Welkin, Increasing Involvement and Related Equity Agreements; Absence of Compensation.**

4.1     Welkin was formed in January, 2014. The Effective Date of Welkin's initial Operating Agreement is March 15, 2014.

4.2     In or around March 2014, Defendants offered Ms. Latanyshyn part-time employment with Welkin.  Ms. Latanyshyn was living in New York at the time and agreed to work 10-15 hours per week.  Defendants agreed to give her 5% membership in the Company (50,000 Units), vesting over 18 months from the Effective Date of the initial Operating Agreement.  Ms. Latanyshyn began working immediately.

4.3     Defendants gave Ms. Latanyshyn a copy of the Welkin Operating Agreement, a Term Sheet that reflected the parties' equity contract, and a Confidentiality Agreement. On April 10, 2014, she signed and returned all documents.

4.4     Within a month of her joining Welkin, Defendants began speaking with Ms. Latanyshyn about an expanded role. Defendants told Ms. Latanyshyn that there could be additional equity for her in six months.  Ms. Latanyshyn began to work more.  Welkin told Ms. Latanyshyn that if she started working full time and moved to Seattle, it would transfer shares from another member, Kurt Jaskowiak, to her.

4.5     In September, 2014, Ms. Latanyshyn visited Seattle and met with Welkin founders, including Defendant Orrick, and other members of the Company. Defendants offered Ms. Latanyshyn another 5% interest in Welkin (50,000 Units) in exchange for her agreement to move to Seattle for full-time work. Defendants gave Ms. Latanyshyn a related, supplemental Term Sheet, dated November 20, 2014 ("Supplemental Term Sheet").  Ms. Latanyshyn decided to accept Defendants' offer and move to Seattle after the holidays.  She executed the November Term Sheet.

4.6     The Supplemental Term Sheet specified an "Effective Date" of September 15, 2014.  It was issued "pursuant to the March 15, 2014 Operating Agreement" and updated the March 15, 2014 Term Sheet previously issued to Ms. Latanyshyn.  It confirmed transfer of an additional 5% equity (another 50,000 Units) to Ms. Latanyshyn.  By its terms, assuming any additional funding, all of the additional 50,000 Units were to vest by March 15, 2015.

4.7     Specifically, the Supplemental Term Sheet promised:

- 12,500 Units vested "as of the Effective Date" (defined in the Operating Agreement as March 15, 2014).
- 12,500 Units vested upon "Commencement of full-time employment."
- 12,500 Units vested "6 months from the Effective Date" (September 15, 2014).
- 12,500 Units vested "12 months from the Effective Date" (March 15, 2015).

4.8     The November 20, 2014 Term Sheet also provided that Ms. Latanyshyn would receive "$50,000 per annum upon commencement of full-time employment."

4.9     In January, 2015, Ms. Latanyshyn began working full time for Welkin.  She moved to Seattle on January 20, 2015.

4.10    As of December 2015, Ms. Latanyshyn had been working for almost 21 months, and full time for almost a year.  She customarily worked more than 40 hours per week and sometimes as much as 60 hours per week.  As of December 2015, Defendants had not paid Ms. Latanyshyn any wages for any of her work.

4.11    On December 21, Ms. Latanyshyn asked Defendants when she could expect to be compensated.  She asked again on February 1, and was told she would receive a check in ten days.  On February 23, 2016, Defendants paid Ms. Latanyshyn $1000.  This is the only money Ms. Latanyshyn has ever received from the Company for her work.

LAW OFFICES OF CHRIS FARIAS, PLLC
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201

**B. Defendants' Retaliatory Termination of Ms. Latanyshyn**

4.12 By the terms of the documents governing her equity interest in Welkin, Ms. Latanyshyn was fully vested in her supplemental 5% equity by March 15, 2015, pending financing. Her original 5% vested six months later, on September 15, 2015.

4.13 In February, 2016, Defendants began communicating regarding a new Operating Agreement and a revised vesting schedule for the Units that had been issued to members. The Company produced a new proposed operating agreement ("Revised OA"). Exhibit A to the Revised OA correctly stated that Ms. Latanyshyn's 100,000 Units were "fully vested" as of February 17, 2016. The Revised OA proposed a revision to that bargained-for vesting schedule. Specifically, Defendants asked Ms. Latanyshyn to agree to an amendment that would reset vesting of her 100,000 Units to 75%, with potential vesting of the remaining 25% after an additional 12 months of service to the Company.

4.14 Ms. Latanyshyn told Defendants that she had already worked for almost two years without compensation, and that she had fulfilled the terms of her equity agreement with Welkin. Ms. Latanysyn told Defendants that she did not want to continue fulltime employment without compensation for another year. She told Defendants that she did not want to retroactively reset vesting on her equity. She tried to negotiate with Defendants but they refused.

4.15 Defendants gave Ms. Latanyshyn a revised term sheet on March 4, 2016. The revised term sheet proposed that Ms. Latanyshyn give up 25% of her vested Units and work full time for another 12 months. Compensation was vaguely contingent on "corporate funding availability," and Ms. Latanyshyn was prohibited from working elsewhere. The proposed Revised OA provided that vesting was dependent upon satisfactory work product, in the "sole discretion" of Welkin Managers.

LAW OFFICES OF CHRIS FARIAS, PLLC
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201

4.16 Ms. Latanyshyn knew that she had already upheld her end of the bargain for the 100,000 Units to which she was contractually entitled. Pending funding, all conditions for vesting had been satisfied. She was concerned about continuing to work without compensation. Ms. Latanyshyn had discussions with Defendants regarding her concerns and proposed potential solutions, but she was met with increasing hostility. During a meeting to discuss her reluctance to sign the proposed Revised OA and Term Sheet, her romantic partner and Welkin founder and manager, Andrei Edwards, became agitated and threatened to end their relationship. Defenant Orrick was present at the meeting and nodded in agreement. Ms. Latanyshyn knew that if she agreed to the new arrangement, Defendants had unbridled discretion to ultimately prevent her from re-vesting in 25% of her Units. She decided to consult an attorney.

4.17 When Ms. Latanyshyn informed Defendants that she had consulted an attorney and that she was determined to be treated fairly, they gave her an affidavit that required her to waive her compensation claims. The affidavit was also factually incorrect in a number of respects. Among other things, it erroneously stated that the original Operating Agreement was executed on March 15, 2015. It erroneously stated that she only had 50,000 vested Units. Finally, it required that Ms. Latanyshyn to falsely attest that her romantic relationship with Welkin founder and Manager, Mr. Edwards, began prior to the beginning of her work for the Company. The affidavit was presented at 4:58 on the afternoon of Friday, March 11. Defendants told Ms. Latanyshyn that she had to sign and return the affidavit and the Revised OA immediately or she would be fired.

4.18 Ms. Latanyshyn communicated with Defendants, highlighted inaccuracies in the affidavit and tried to reach an acceptable compromise. She made it clear that it was not her intent to interfere with any prospective funding, but to be treated fairly and that she felt she was being

LAW OFFICES OF CHRIS FARIAS, PLLC
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201

coerced. She stated that she was willing to sign the Revised OA in the interest of helping the Company, provided she had certain assurances regarding her future employment, compensation and re-vesting. Welkin refused to give her assurances and continued to insist that she sign the affidavit as written, immediately.

4.19 Ms. Latanyshyn did not sign the affidavit and she was subsequently terminated, effective March 17, 2016.

4.20 Ms. Latanyshyn never signed the Revised OA.

4.21 Defendants have informed Ms. Latanyshyn that she now has only 50 vested Units in Welkin.

4.22 Ms. Lataynshyn has been paid a total of $1000 for her Welkin work. She has work-related expenses of approximately $4000 that have not been reimbursed.

## V. CAUSES OF ACTION

**A. Violation of State and Federal Wage Statutes**

5.1 Paragraphs 1-19 are reincorporated here by reference.

5.2 State and federal wage statutes require that an employer pay an employee at least minimum wage for all hours worked, and overtime for hours in excess of 40 per week. RCW 49.46.020, 29 USC §206. Also, upon termination, an employer is required to pay the employee "the wages due [her] on account of [her] employment." RCW 49.48.010. Exceptions to employee compensation requirements are specific, limited, and do apply in this case. *See id.*

5.3 A prevailing plaintiff is entitled to recover her attorney's fees and costs. RCW 49.46.090(1); RCW 49.48.030; 29 USC §216(b). Liquidated damages are available for willful conduct. 29 USC §216(b); RCW 49.52.070. Moreover, individuals acting on behalf of an

employer with respect to an employee are personally liable on wage claims. RCW 49.46.010(4); 29 USC §203(d).

5.4 Defendants owe wages to Ms. Latanyshyn in an amount to be proven at trial, plus liquidated damages and associated attorney's fees and costs.

**B. Retaliatory Termination**

5.5 Paragraphs 1-19 are reincorporated here by reference.

5.6 State and federal law prohibit retaliation against an employee who asserts her right to be paid for her work. RCW 49.46.100; 29 USC 215(a)(3). These statutes give rise to an action for damages, including the compensation and other benefits that the employee would have received had she had not been wrongfully discharged, emotional distress and attorney's fees and costs. RCW 49.46.090; 29 USC §216(b). Liquidated damages are available. 29 USC §216(b); RCW 49.52.070. Under both state and federal wage statutes, individuals acting on behalf of an employer are individually liable for retaliatory discharge claims. RCW 49.46.010(4); 29 USC §203(d).

5.7 Following Ms. Latanyshyn's assertion of her right to be paid for her work, Defendants demanded that she sign an affidavit waiving her right to be paid for her work. When Ms. Latanyshyn refused to sign the affidavit, she was fired. Defendants are liable to Ms. Latanyshyn for damages including the compensation and equity that she would have received had she had not been wrongfully discharged, emotional distress, liquidated damages, attorney's fees and costs.

**C. Breach of Contract**

5.8 Paragraphs 1-19 are reincorporated by reference.

LAW OFFICES OF CHRIS FARIAS, PLLC
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201

5.9     In exchange for certain commitments by the Defendants, Ms. Latanyshyn agreed to work for Welkin.  In exchange for additional commitments, she agreed to move to Seattle and work full time.

5.10    Ms. Latanyshyn has fully performed her contractual obligations.  There is no legal basis for Welkin to retroactively amend its agreement with her and Welkin is in breach.  Ms. Latanyshyn's compensation should be calculated based on the agreed-upon rate of $50,000 per year.  She should reimbursed for her work related expenses.  She is entitled to 100,000 vested Class A Units of Welkin equity.

**D. Promissory Estoppel**

5.11    Defendants made promises to Ms. Latanyshyn regarding compensation and equity ownership and expected that she would rely on those promises.  Ms. Latanyshyn did, in fact, reasonably rely on Defendants' promises and suffered damage as a result.  Equity requires that Welkin compensate Ms. Latanyshyn for her loss.

## VI.     RELIEF REQUESTED

Plaintiff respectfully requests that the court enter judgment as follows:

1. Judgment in favor of Ms. Latanyshyn and against Defendants on all claims;

2. Restoration of Ms. Latanyshyn's vested equity;

3. An award of damages against Defendants, including lost wages, expenses and emotional distress, in an amount to be proven at trial;

4. An award of liquidated damages against Defendants;

5. An award of attorneys' fees and costs against Defendants; and

6. Such other relief as the Court deems equitable and fair.

LAW OFFICES OF CHRIS FARIAS, PLLC
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201

Dated this 4th day of January, 2017.

Law Offices of Chris Farias, PLLC

s/Chris Farias
Chris Farias, WSBA No. 21743
1420 Fifth Ave, Suite 3000
Seattle, WA 98101
Phone: 206.892.2201
chris@chrisfariaslaw.com
Attorney for Plaintiff Maryanne Latanyshyn

COMPLAINT - 10
PLLC

LAW OFFICES OF CHRIS FARIAS,
1420 FIFTH AVENUE, SUITE 3000
SEATTLE, WA 98101
(206)892-2201